IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OKOEGUALE OBINYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:18-CV-0933-D |
| VS. | § | |
| | § | |
| PRIME THERAPEUTICS LLC, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is an action by *pro se* plaintiff Okoeguale Obinyan ("Obinyan") alleging claims for race and national origin discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Walgreens Specialty Pharmacy Holdings, LLC ("WSPH")—the sole remaining defendant—moves for summary judgment on the ground, *inter alia*, that it was not Obinyan's employer. Obinyan opposes the motion and also moves to compel. For the reasons that follow, the court grants WSPH's motion, denies Obinyan's motion, and dismisses the remainder of this action with prejudice by judgment filed today.

I

In December 2010 former defendant Prime Therapeutics LLC ("Prime"), a third-party pharmacy benefits manager, hired Obinyan to work as a customer service representative in

its Irving, Texas facility.[1]  During his tenure at Prime, Obinyan held multiple positions. From late 2016 until the end of his employment, Obinyan's supervisor was former defendant Penelope Boyd-Gear ("Boyd-Gear"), an employee of Prime, and his day-to-day work was supervised by former defendant Mark Mason ("Mason"), an employee of former defendant Robert Half International Inc. ("Robert Half"), who worked at Prime's Irving facility on a contract basis.

On March 31, 2017 Prime and former defendant Walgreen Co. ("Walgreens") consummated an agreement ("Joint Venture") to combine certain pharmacies and related businesses that each company had previously owned separately.  In connection with the Joint Venture, WSPH, a newly-created holding company jointly owned by Walgreens and Prime,[2] assumed ownership of the Irving facility where Obinyan worked.  Because WSPH did not yet have its own employment policies, payroll systems, benefits plans, or human resources staff, it entered into an employee lease agreement with Prime under which employees at the Irving facility (including Obinyan) would remain employees of Prime until the end of 2017,

---

[1]In deciding WSPH's motion for summary judgment, the court views the evidence in the light most favorable to Obinyan as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]In approximately October 2017 certain pharmacies that WSPH owns (including the Irving facility where Obinyan worked) began utilizing, for internal purposes, a trade name of "AllianceRx Walgreens Prime."  WSPH maintains that "Alliance Rx Walgreen Prime"—whom Obinyan has sued as a defendant—is not a distinct legal entity, but is instead a trade name used by four different legal entities that WSPH owns and operates as licensed pharmacies across the United States.

at which point the lease agreement would expire and Prime's employees would become employed by WSPH.

On June 30, 2017 Obinyan received a coaching memorandum from Boyd-Gear allegedly because he was not meeting his daily production metrics. That same day, Boyd-Gear also placed Obinyan on a separate Performance Improvement Plan. Obinyan believed these two pieces of written counseling were discriminatory and violated Prime's policies. Accordingly, he sent written complaints to Prime's Vice President of Human Resources, and on June 20, 2017 he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his charge of discrimination, Obinyan listed Prime as his employer and alleged that he was "being retaliated against because [he] stood up for [him]self against unfair and biased annual reviews and work assignments." D. App. 100.

Prime advised Obinyan in an August 31, 2017 letter that it had decided to discontinue back-end operations in Irving and that, as a result, Obinyan's job would be eliminated near the end of the year. Prime provided Obinyan with two options. He could either pursue another position within Prime during the Transition Period (defined as August 31, 2017 through the closure date), or he could remain employed with Prime through the Transition Period and not pursue another position. Under the second option, Obinyan's employment would terminate at the end of the Transition Period, and he would then "be eligible for severance under Prime's Severance Pay Plan, subject to certain conditions." D. App. 96. Obinyan was unable to secure another position, and on October 13, 2017 Prime notified him that it was terminating his employment. When Obinyan later sought the compensation

offered in the severance package, Prime's legal department informed him that, because he had declined to sign the "Release of All Claims" contained in Prime's severance agreement, he was not entitled to severance benefits.

On November 28, 2017 Obinyan filed a second charge of discrimination with the EEOC alleging national origin discrimination, again listing Prime as his employer. After Obinyan received his right to sue letter, he filed the instant lawsuit against Prime, Robert Half, Walgreens, "Alliance Rx Walgreen Prime," Boyd-Gear, and Mason, alleging claims for race and national origin discrimination and retaliation, in violation of Title VII. All defendants other than "Alliance Rx Walgreen Prime" filed motions to dismiss and were eventually dismissed from the case.[3]

When "Alliance Rx Walgreen Prime" failed to answer Obinyan's complaint, Obinyan requested and obtained an entry of default. On October 24, 2018 WSPH moved to set aside the entry of default, arguing, *inter alia*, that it had been incorrectly named as "Alliance Rx Walgreen Prime." The court granted WSPH's motion and ordered WSPH to file a responsive pleading. The court then granted WSPH's motion to dismiss, but permitted Obinyan to filed an amended complaint. Obinyan then filed a motion to replead case against WSPH, which the court construed as his amended complaint. The amended complaint alleges claims of

---

[3]On January 18, 2019 the court adopted the magistrate judge's December 13, 2018 findings, conclusions, and recommendation and granted the motion to dismiss filed by defendants Walgreens, Robert Half, Mason, and Boyd-Gear; granted the motion to dismiss for insufficient service of process filed by defendant Prime; and entered a final Fed. R. Civ. P. 54(b) judgment in favor of Robert Half, Walgreens, Mason, and Boyd-Gear. On February 12, 2019 the court entered a final Rule 54(b) judgment in favor of Prime.

national origin discrimination and retaliation.[4]

WSPH now moves for summary judgment on the grounds that WSPH was never Obinyan's employer; Obinyan failed to exhaust his administrative remedies as to WSPH by not naming WSPH in either charge of discrimination that he filed with the EEOC; and Obinyan has no cognizable evidence of discrimination or retaliation. Obinyan opposes the motion. Briefing is now complete, and WSPH's motion is ripe for decision.[5]

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37

---

[4]On January 22, 2020 WSPH filed a motion to dismiss Obinyan's amended complaint. The court denied the motion, holding, *inter alia*, that "[l]iberally construed, the first amended complaint appears to attempt to plead that WSPH became Obinyan's employer as the result of an April 3, 2017 commercial transaction," and "[c]onsidering Obinyan's *pro se* status, and the apparently complicated nature (at least to a *pro se* litigant) of WSPH's relationship with Prime's employees after the April 3, 2017 transaction . . . Obinyan should be afforded an opportunity to conduct discovery regarding the corporate entity that employed him before he must risk dismissal of his suit against WSPH." Mar. 5, 2020 Order at 2.

[5]As discussed *infra* at § IV, Obinyan filed on February 8, 2021 a "second motion to compel production of documents respo[n]ses for defendant [WSPH] incorrectly named as AllianceRx Walgreens Prime." But he does not contend, either in his motion to compel or in his response to WSPH's motion for summary judgment, that he requires additional evidence to sufficiently respond to WSPH's motion for summary judgment.

- 5 -

F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

WSPH moves for summary judgment on the ground that it was not Obinyan's employer under any theory of liability, and, therefore, that it is not a proper party to this lawsuit.

A

Title VII prohibits an "employer" from discriminating against "any individual . . . because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Similarly, the statute prohibits an "employer" from discriminating against "any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice[.]" *Id.* § 2000e-3(a). "As Title VII prohibits discrimination in the employment context, generally only employers may be liable under Title VII." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted) (citing *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir. 2001)). This means that, to establish Title VII liability on the part of a particular defendant, the

- 6 -

plaintiff must prove both that the defendant meets Title VII's definition of "employer," i.e., "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , and any agent of such a person . . . ," *Muhammad v. Dallas County Community Supervision & Corrections Department*, 479 F.3d 377, 380 (5th Cir. 2007) (quoting 42 U.S.C. § 2000e(b)), and that "an employment relationship exists between the plaintiff and the defendant," *id.* (citing *Deal v. State Farm County Mutual Insurance Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993)).

B

WSPH first contends that, after the Joint Venture, it and Prime "remained separate and distinct legal entities," D. Br. 3, and were not a single employer under Title VII.

1

Superficially distinct entities may be jointly liable for discriminatory acts in the employment context if they are found to be "a single, integrated enterprise: a single employer." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The Fifth Circuit has set forth two tests for determining employer liability in Title VII cases. *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763-64 (5th Cir. 1997). Courts initially inquire into whether a plaintiff is an employee of one defendant by using the "hybrid economic realities/common law control test." *Id.* at 764. "If the plaintiff is found to be an employee of one of the defendants under the hybrid test, but questions remain whether a second (or additional) defendant is sufficiently connected to the employer-defendant so as

to be considered a single employer," the court then applies the single employer/integrated enterprise test set forth in *Trevino*. *Schweitzer* 104 F.3d at 764; *see also Hawkins v. TRT Holdings, Inc.*, 2021 WL 149021, at *2 (N.D. Tex. Jan. 15, 2021) (Starr, J.) (In Title VII cases, courts first apply the hybrid test "to determine whether any defendant employs the plaintiff and then the integrated enterprise test to determine if other defendants also employ him.").

It is undisputed that Obinyan was an employee of Prime. Accordingly, there is no need for the court to apply the hybrid test. *See Schweitzer*, 104 F.3d at 764. At issue is whether WSPH was a joint employer under *Trevino*'s single employer/integrated enterprise analysis.

The single employer test uses four factors to determine whether distinct entities may be considered integrated as a single employer. *Trevino*, 701 F.2d at 404. The so-called *Trevino* factors are: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Id*. The second factor has traditionally been most important, "with courts refining their analysis to the single question, 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Schweitzer*, 104 F.3d at 764 (quoting *Trevino*, 701 F.2d at 404).

2

WSPH maintains that it and Prime operated as two separate and distinct entities and were not a single integrated enterprise. Regarding the second *Trevino* factor, WSPH

- 8 -

contends that it played no role in the decision to terminate Obinyan's employment; Prime handled all of Obinyan's employment-related counseling and discipline, including the ultimate decision to terminate Obinyan's employment; and Obinyan cannot present any evidence to the contrary. Regarding the other *Trevino* factors, WSPH contends that there was no interrelation of operations between WSPH and Prime; WSPH did not control Prime's employment practices or handle Prime's payroll or benefits administration while Obinyan was employed; WSPH and Prime were not under common management, ownership, or financial control; and, although Obinyan continues to allege that WSPH and Prime merged, no such corporate transaction ever occurred.

Obinyan does not directly respond to WSPH's arguments under *Trevino*; he instead addresses WSPH's employer status only under the joint employer doctrine discussed below. *See infra* § III(C).

3

Although Obinyan's failure to respond does not permit the court to enter a "default" summary judgment, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2)-(3). Obinyan has not designated specific facts sufficient to create a fact issue on the question whether WSPH and Prime were a single employer under *Trevino*. Accordingly, the court grants WSPH's motion for summary judgment to the extent that it is based on the argument that it and Prime were not a single employer.

C

The court next considers WSPH's argument that it was not a "joint employer" with Prime.

1

"The Fifth Circuit has suggested that the joint-employer standard is appropriate in some Title VII cases." *Boutin v. Exxon Mobil Corp.*, 730 F.Supp.2d 660, 680 (S.D. Tex. 2010).[6] Under this standard, "[t]he existence of a joint employer relationship depends on the control which one employer exercises, or potentially exercises, over the labor relations policy

---

[6]Although the Fifth Circuit has not expressly endorsed the joint employer test articulated in *Boutin*, it has affirmed the results in employment discrimination cases in which the district court applied the joint employer test. *See, e.g., See Jones v. Norfolk S. Co.*, 348 Fed. Appx. 970, 973 (5th Cir. 2009) (per curiam) (upholding district court's application of joint employer test in Title VII case on ground that plaintiff could not prevail under either joint employer test or *Trevino* test); *Turner*, 476 F.3d at 344-45 (applying integrated enterprise test and finding joint employer argument waived, but noting that joint employer "argument clearly lack[ed] merit" because the alleged employer had not retained sufficient control of plaintiff's employment).

of the other." *Id.* at 679 (quoting *N. Am. Soccer League v. NLRB*, 613 F.2d 1379, 1382 (5th Cir. 1980)). "A company becomes a joint employer when it, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *EEOC v. S&B Indus., Inc.*, 2016 WL 7178969, at *7 (N.D. Tex. Dec. 8, 2016) (Fitzwater, J.) (internal quotation marks omitted) (quoting *Boutin*, 730 F.Supp.2d at 680). To determine "whether a defendant was a joint employer of the plaintiff employee where one entity contracts with another to provide services, district courts in the Fifth Circuit examine five control factors." *Hall v. Arkema, Inc. & Team Indus. Servs., Inc.*, 2020 WL 7646367, at *3 (S.D. Tex. Dec. 23, 2020). These factors are "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *EEOC v. Valero Refin.- Tex. L.P.*, 2013 WL 1168620, at *4 (S.D. Tex. Mar. 13, 2013) (quoting *AT&T v. NLRB*, 67 F.3d 446, 451 (2d Cir. 1995)); *see also Boutin*, 730 F.Supp.2d at 680 (listing same factors).

2

WSPH contends that Obinyan cannot meet his summary judgment burden to show that WSPH and Prime should be considered a joint employer under Title VII. It maintains that Obinyan's testimony makes clear, and WSPH's evidence confirms, that not a single factor under the joint employer test is satisfied:

- 11 -

> Prime hired and fired Obinyan. Prime's employees administered all of the disciplinary actions Obinyan received and about which he complains. Prime handled all aspects of Obinyan's payroll throughout his employment. At all times during his employment, Obinyan was a participant in Prime's medical and related employee benefits plans. And Prime, not WSPH supervised Obinyan's day-to-day employment. Finally, the employment of employees at the Irving facility was not governed by a collective bargaining agreement in either 2017 or 2018.

D. Br. 17-18 (footnotes omitted).

In his January 19, 2021 response,[7] Obinyan adduces evidence that he applied for two jobs on the centralized website that Prime and WSPH used; WSPH employee Anthony Carter interviewed him on August 9, 2017; an email referred to him as an employee of WSPH; he was directed by WSPH to work on refund files and send them directly to WSPH; and he received a branded logo T-shirt with the company name "Alliance RX Walgreens+Prime." Citing the Fair Labor Standards Act, 29 U.S.C. § 203, Obinyan appears to argue that WSPH was responsible for hiring Prime employees. He bases this argument on evidence that he applied for seven positions (five with Prime, two with WSPH) through a website shared by

---

[7]Obinyan filed on January 19, 2021 a document entitled "plaintiff opposes the defendant Walgreens Specialty Pharmacy Holdings, LLC's motion to dismiss." Despite its title, this document contains Obinyan's summary judgment response arguments. Without obtaining leave of court, Obinyan also filed on March 1, 2021 a "second response" to WSPH's motion for summary judgment, which is essentially a surreply. The court has not considered Obinyan's March 1, 2021 filing because the local civil rules do not permit a surreply to be filed without leave of court. *See* N.D. Tex. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence.").

WSPH. Obinyan then contends—based on evidence that he "sent an email to [Mason] that indicated that an AP refund file from 9/29/17 was sent back to AP stating that the file should be sent to WSPH" and "WSPH provided a spreadsheet template in regards to how to format that refund file"—that "[t]his is a clear indication of WSPH has control and supervision of the plaintiff's work." P. 1/19/21 Br. 2.

3

Obinyan has failed to create a genuine issue of material fact on the question whether WSPH was his joint employer. The evidence on which he relies establishes at most that WSPH and Prime used a centralized website to process job applications, and that Obinyan informed his supervisor, Mason (a Robert Half employee), that "Prime Ap returned [a] File back from 09/29/2017 stating that we should send the Refund File to Walgreens Ap and they provided a spread sheet template," P. 1/19/21 Br. at Ex. W. This evidence would not, as Obinyan argues, permit a reasonable jury to find that WSPH had control and supervision over Obinyan's work. Nor would it permit a reasonable jury to find that WSPH did any hiring or firing on Prime's behalf.

Because Obinyan has failed to produce evidence of any of the joint-employer factors, and because he has otherwise failed to create a fact issue on the question whether there was an employment relationship between him and WSPH, the court grants WSPH's motion for summary judgment on Obinyan's Title VII claims.[8]

---

[8]Because the court is granting WSPH's motion for summary judgment on this basis, it does not address WSPH's other arguments, i.e., that Obinyan did not exhaust his

IV

Obinyan filed on February 8, 2021 a "second motion to compel production of documents responses for defendant [WSPH]." Because the court is today granting summary judgment dismissing Obinyan's Title VII claims against WSPH, and Obinyan does not rely on his motion to compel to seek relief under Rule 56(d), the court denies Obinyan's second motion to compel as moot.

\* \* \*

Accordingly, for the reasons explained, the court grants WSPH's motion for summary judgment, denies Obinyan's second motion to compel, and dismisses the remainder of this action with prejudice by judgment filed today.

**SO ORDERED**.

March 17, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

administrative remedies as to WSPH and that Obinyan cannot present evidence of actionable discrimination.